**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| MOHAMED OSMAN, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | Case No. CIV-26-00813-JD |
| | ) | |
| DON JONES, et al., | ) | |
| | ) | |
| Respondents. | ) | |

**ORDER**

Petitioner Mohamed Osman ("Petitioner") brings a Petition for Writ of Habeas Corpus ("Petition") [Doc. No. 1], alleging the burden of proof imposed at his bond hearing was misallocated in violation of the Fifth Amendment's Due Process Clause. Respondents filed a Response in Opposition to the Petition for Writ of Habeas Corpus. [Doc. No. 7].[1] Petitioner filed a Reply. [Doc. No. 8].[2] As set forth more fully below, the Court DENIES the Petition.

## I. BACKGROUND

Petitioner is a citizen of Eritrea who entered the United States at Tecate, California, on June 22, 2024. [Doc. No. 1 ¶¶ 2, 14]; [Doc. No. 1-1 at 1]. He alleges that he was initially released from immigration custody on his own recognizance that day and later taken back into custody in Chicago, Illinois on November 3, 2025. [Doc. No. 1

---

[1] The Response was filed on behalf of the federal Respondents and not Warden Don Jones. [Doc. No. 7 at 1 n.1].

[2] Citations to the filings use CM/ECF designations from the top of district court filings for both page numbers and exhibit numbers.

¶¶ 2–3, 30–31]. At the time he filed the Petition, he was detained at the Kay County Justice Facility in Newkirk, Oklahoma, which is within this judicial district. *Id.* ¶¶ 1, 14; [Doc. No. 1-4 at 1]; *see also* 28 U.S.C. § 116(c).

On March 23, 2026, an Immigration Judge ("IJ") held a custody redetermination hearing and denied Petitioner release on flight-risk grounds, citing (1) the merits hearing scheduled for the following day, (2) Petitioner's manner of entry, (3) Petitioner's lack of ties to the United States, and (4) Petitioner's recent entry. [Doc. No. 1 ¶¶ 4, 35]; [Doc. No. 1-2 at 1]. Petitioner reserved appeal. [Doc. No. 1-2 at 2]. The next day, an IJ ordered Petitioner removed to Uganda, and Petitioner reserved the right to appeal. [Doc. No. 1-3 at 1–2]. Respondents state that Petitioner appealed the removal order on April 15, 2026, but did not appeal the bond determination. [Doc. No. 7 at 2].

Petitioner brings a single-count habeas petition alleging a violation of due process. [Doc. No. 1 ¶¶ 38–46]. He contends that his previous bond hearing was constitutionally insufficient because the Government did not bear the burden of proving flight risk or danger to the community. *Id.* ¶¶ 35, 42–46. He seeks immediate release or, alternatively, another bond hearing at which the Government bears the burden of proof to a clear and convincing evidentiary standard. *Id.* at 13; [Doc. No. 8 at 1].

## II. LEGAL STANDARDS

The writ of habeas corpus is available to those held "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). And § 2241(c)(3) generally gives district courts jurisdiction over challenges to the legality of an alien's detention. *Rasul v. Bush*, 542 U.S. 466, 483–84 (2004); *see also Soberanes v.*

*Comfort*, 388 F.3d 1305, 1310 (10th Cir. 2004) ("Challenges to immigration detention are properly brought directly through habeas.").

Section 1226(a) "authorizes the Government to detain certain aliens already in the country pending the outcome of [their] removal proceedings." *Jennings v. Rodriguez*, 583 U.S. 281, 289 (2018) (referencing 8 U.S.C. § 1226(a)). The statute allows release on bond but does not require the Government to justify continued detention by clear and convincing evidence. *Id.* at 306. The implementing regulation places the burden on the alien to demonstrate that release would not pose a danger to property or persons and that the alien is likely to appear for any future proceeding. 8 C.F.R. § 1236.1(c)(8); *see Matter of R-A-V-P-*, 27 I. & N. Dec. 803, 804 (B.I.A. 2020) (stating that the burden of proof to establish bond eligibility is on the noncitizen); *In re Guerra*, 24 I. & N. Dec. 37, 40 (B.I.A. 2006) (same); *In re Adeniji*, 22 I. & N. Dec. 1102, 1113, 1116 (B.I.A. 1999) (same).

Section 1226(e) precludes review of the Attorney General's discretionary judgments and fact determinations regarding a custody determination. But it does not preclude a constitutional challenge to the governing framework itself. *Jennings*, 583 U.S. at 295–96; *Demore v. Kim*, 538 U.S. 510, 516–17 (2003).

## III. <u>ANALYSIS</u>

Since the Petition was filed and briefed, the Tenth Circuit issued *Santillan Quiroz v. Mullin*, 180 F.4th 1226 (10th Cir. 2026). For the Court's current purposes,[3] that

[3] This Court is bound to follow Tenth Circuit law. The Court recognizes, however, that the legal issue concerning §§ 1225 and 1226 is pending before the U.S. Supreme

decision resolves the parties' dispute over whether Petitioner's detention falls under § 1225 or § 1226. Section 1226(a) governs here. What remains is whether due process requires shifting the burden of proof from Petitioner to Respondents.

Under the circumstances present in this case, placing the burden of proof on Petitioner did not violate due process.[4] Aliens are entitled to due process in removal proceedings. *Reno v. Flores*, 507 U.S. 292, 306 (1993). But the Supreme Court has "firmly and repeatedly" recognized that the immigration context permits "rules that would be unacceptable if applied to citizens." *Demore*, 538 U.S. at 522 (first quotation); *Mathews v. Diaz*, 426 U.S. 67, 80 (1976) (second quotation); *see also Flores*, 507 U.S. at 305–06 (recognizing that "in the exercise of its broad power over immigration and naturalization, Congress regularly makes rules that would be unacceptable if applied to citizens" (internal quotation marks and citation omitted)); *Santillan Quiroz*, 180 F.4th at 1249–50 (same). Civil detention pending the resolution of removal proceedings has long been recognized as "a constitutionally valid aspect of the deportation process." *Demore*, 538 U.S. at 523.

---

Court. *See Rhoney v. Barbosa da Cunha*, No. 26-104 (Oct. 1, 2026). Thus, the issue of whether an interior-detained noncitizen is even eligible for a bond hearing is before the Supreme Court.

[4] The Court addressed this same constitutional question in *Gomez Toro v. Mullin*, No. 26-CV-00315-JD, Doc. No. 19 (W.D. Okla. May 12, 2026), and there the Court concluded that the existing bond procedures provided adequate process on the facts of that case. The relevant facts are similar in this case, so the Court applies the same rules and analysis here.

Petitioner invokes *Mathews v. Eldridge*, 424 U.S. 319 (1976), and argues that his liberty interest, the risk of erroneous detention when the alien bears the burden, and the Government's comparatively limited interest require a bond hearing at which the Government must prove danger or flight risk by clear and convincing evidence. [Doc. No. 1 ¶¶ 24–28, 43–46]; [Doc. No. 8 at 4–7]. He emphasizes that he was previously released, has lawful permanent resident relatives in the Chicago area, and has no criminal history. [Doc. No. 1 ¶¶ 23, 25, 30, 33]; [Doc. No. 8 at 7].

Respondents contend that Petitioner received an individualized bond hearing and that the regulation properly places the burden on him. [Doc. No. 7 at 2–4 & n.3]. They also (1) argue that § 1226(e) prohibits much of Petitioner's claim; (2) note that Petitioner did not appeal the bond determination; and (3) point out that Petitioner does not allege denial of an opportunity to make arguments or factfinding based on undisclosed evidence. *Id.* at 2–5.

Although § 1226(e) bars reweighing the IJ's discretionary flight-risk determination here, the aspects of the Petition that challenge the constitutionality of the burden allocation appear reviewable as they go "to 'the statutory framework'" governing Petitioner's detention and not "a matter of 'discretionary judgment,' 'action,' or 'decision.'" *Jennings*, 583 U.S. at 295–96 (quoting *Demore*, 538 U.S. at 516–17). The Court therefore addresses that challenge on the merits.

In the absence of Tenth Circuit precedent on this question, the Court proceeds to (1) survey the approaches of the circuit courts of appeal to address the bond burden allocation question, and (2) examine the merits of Petitioner's due process claim.

### A. Circuit Survey: Burden Shifting in Bond Hearings

A preliminary question remains: What test applies here? So far, the circuits to directly address immigration bond hearing burden allocation have applied the *Mathews v. Eldridge* balancing test. *See Hernandez-Lara v. Lyons*, 10 F.4th 19, 27 (1st Cir. 2021); *Velasco Lopez v. Decker*, 978 F.3d 842, 851 (2d Cir. 2020); *Miranda v. Garland*, 34 F.4th 338, 358–59 (4th Cir. 2022); *Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1206–07 (9th Cir. 2022); *see also Borbot v. Warden Hudson Cnty. Corr. Facility*, 906 F.3d 274, 279 (3d Cir. 2018) (noting, without holding, that the court perceived "no problem with" the distinction between the Third Circuit's burden shifting to the Government in a § 1226(c) context and the potential lack of burden shifting in a § 1226(a) context). The three-factor balancing test provided in *Mathews* includes: (1) "the private interest that will be affected by the official action"; (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards"; and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." 424 U.S. 319, 335 (1976).

The Court has some doubt that *Mathews*—a procedural due process test created in a disability-benefit termination context—operates properly here. The Supreme Court "ha[s] never viewed *Mathews* as announcing an all-embracing test for deciding due process claims." *Dusenbery v. United States*, 534 U.S. 161, 167–68 (2002); *see also Rodriguez Diaz*, 53 F.4th at 1214 (Bumatay, J., concurring) (arguing that the question should be resolved by reference to "the text, structure, and history of the Constitution,

rather than through interest balancing”). And the Supreme Court has never applied *Mathews* to a § 1226(a) bond burden challenge.

However, because neither party has briefed an alternate approach and the outcome would not change, the Court applies *Mathews* here. The circuits fragment on three related questions: (1) whether shifting the burden to the Government is ever required; (2) when such a burden shift should occur, if at all; and (3) if a burden shift does occur, what ought to be the evidentiary standard. The First and Second Circuits allow for burden shifting to the Government under at least some circumstances. The Fourth and Ninth Circuits have rejected a burden shift.

### *1. The First Circuit*

In *Hernandez-Lara*, the First Circuit announced a categorical rule that “the government must bear the burden of proving dangerousness or flight risk in order to continue detaining a noncitizen under section 1226(a),” with clear and convincing evidence required for dangerousness and a preponderance for flight risk. 10 F.4th at 39–40. Applying *Mathews*, the court held the first factor (the private interest at stake) cut in the alien’s favor because “[f]reedom from imprisonment . . . lies at the heart of the liberty that [the Due Process] Clause protects.” *Id.* at 28 (second alteration in original) (quoting *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001)). On the second factor (risk of erroneous deprivation and value of safeguards), the court concluded it also weighs in the alien’s favor because detained aliens lack appointed counsel, lack ready access to records, often face language barriers, and must “prov[e] a negative.” *Id.* at 30–31. The court concluded that “the government is generally far more able to meet the burden of proof on the

question of danger than a detained noncitizen." *Id.* at 31. And on the third factor (the Government's interest), the court determined that "the public interest in placing the burden of proof on the detainee is uncertain at best, and may well be negative." *Id.* at 33.

### *2. The Second Circuit*

The Second Circuit reached a similar outcome in *Velasco Lopez*, but only in the setting of prolonged detention. The petitioner there had been held for fifteen months without the Government having provided "information sufficient to show that Velasco Lopez was a poor bail risk." *Velasco Lopez*, 978 F.3d at 853. The panel held that his "prolonged incarceration, which had continued for fifteen months without an end in sight or a determination that he was a danger or flight risk, violated due process," *id.* at 855, and that "a clear and convincing evidence standard of proof provides the appropriate level of procedural protection," *id.* at 856.

Applying *Mathews*, the court found "the first *Mathews* factor cuts sharply in [the petitioner's] favor," *id.* at 852, in part because the conditions of detention were comparable to those of criminal incarceration, *id.* at 851–52. On the second factor, the court emphasized the same evidentiary asymmetry the First Circuit later identified—the petitioner had been unable to obtain his own DACA file from ICE despite repeated requests. *Id.* at 852–53. On the third factor, the court reasoned that "the longer detention continues, the greater the need for the Government to justify its continuation," *id.* at 855, and that "the Government has not articulated an interest in the prolonged detention of noncitizens who are neither dangerous nor a risk of flight," *id.* at 854. However, the court

declined to "establish a bright-line rule" for when detention becomes prolonged enough to trigger the shift. *Id.* at 855 n.13.

### *3. The Fourth Circuit*

In *Miranda v. Garland*, the Fourth Circuit took a different approach on its review of a class-wide preliminary injunction imposing a clear and convincing burden on the Government. Writing for the court, Judge Quattlebaum opined that "the detention procedures adopted for § 1226(a) bond hearings provide sufficient process to satisfy constitutional requirements." *Miranda*, 34 F.4th at 346. The court relied heavily on the principle that "[a]liens facing removal proceedings, although entitled to due process under the Constitution, are not entitled to the same process as citizens." *Id.* at 365.

On the first *Mathews* "private interest" factor, the court rejected reliance on the *Addington v. Texas*, 441 U.S. 418 (1979), analysis of civil commitment because that case had "involved detention of United States citizens whereas § 1226(a) involves detention of aliens awaiting removal hearings." *Id.* at 359. Given consistent Supreme Court precedent holding that "aliens are due less process when facing removal hearings than an ordinary citizen," Judge Quattlebaum implied that the liberty interest held by the petitioner was less weighty a factor than in analogous cases involving citizens. *Id.* at 361.

On the second factor, the court in *Miranda v. Garland* reversed the structural asymmetry argument the First and Second Circuits had credited: "[A]liens should know as much or more than the government" regarding mitigating evidence on danger and flight risk. *Id.* at 362. The court also catalogued the opportunities § 1226(a)'s existing procedures already afford: an opportunity before the immigration officer; an opportunity

for a hearing on bond before an IJ where the alien has an opportunity to present evidence about release, including through witnesses and documents; and an appeal of the decision to deny bond to the Board of Immigration Appeals ("BIA"). *Id.* On the third factor, the court emphasized that "'control over matters of immigration is a sovereign prerogative,'" noting that "Congress has repeatedly shown that it considers immigration enforcement—even against otherwise non-criminal aliens—to be a vital public interest." *Id.* at 364 (quoting *Landon v. Plasencia*, 459 U.S. 21, 34 (1982)).

### *4. The Ninth Circuit*

The Ninth Circuit followed, holding that "due process does not require the [burden-shifting] procedures [the petitioner] would have us impose," even after approximately fourteen months of § 1226(a) detention. *Rodriguez Diaz*, 53 F.4th at 1193, 1207. Applying *Mathews*, the court "assume[d]" the petitioner's detention qualified as prolonged but stressed it was "important not to overstate the strength of [his] showing": he had received an initial hearing within two months, could seek redeterminations on changed circumstances, was responsible for much of the detention's length through his own appellate choices, and was subject to a final order of removal. *Id.* at 1207–08.

On the second factor, the court rejected the asymmetry argument as fact-bound: the petitioner in *Rodriguez Diaz* had counsel, was English-fluent, and had marshaled considerable evidence. *Id.* at 1212. The *Rodriguez Diaz* court further concluded that "the existing agency procedures sufficiently protected [the petitioner's] liberty interest and mitigated the risk of erroneous deprivation." *Id.* at 1209. The court reasoned that the agency's decision to detain the petitioner "was subject to numerous levels of review, each

offering [the petitioner] the opportunity to be heard by a neutral decisionmaker," and "[t]hese procedures ensured that the risk of erroneous deprivation would be 'relatively small.'" *Id.* at 1210 (citation omitted).

On the third factor, the *Rodriguez Diaz* court emphasized that the Government's interests "increase with the passage of time," because "[t]he longer detention lasts and the longer the challenges to an IJ's order of removal take, the more resources the government devotes to securing an alien's ultimate removal." *Id.* at 1208. The court added that it was "aware of no Supreme Court case placing the burden on the government to justify the continued detention of an alien, much less through an elevated 'clear and convincing' showing." *Id.* at 1211.[5]

**B. Due Process Does Not Require Burden Shifting on This Record**

The survey shows a fragmented circuit split. The First Circuit shifts the burden categorically, in every § 1226(a) bond hearing. The Second Circuit shifts it only after detention has become prolonged. The Fourth and Ninth Circuits have declined to require the shift, even when detention is prolonged, though the Ninth Circuit holds open the possibility that a fact-bound evidence and advocacy inequity could change the calculus. The Court adopts in part the approaches of the Fourth and Ninth[6] Circuits.

[5] Judge Bumatay concurred separately, urging that in the future the question be resolved by reference to "the text, structure, and history of the Constitution, rather than through interest balancing." *Id.* at 1214 (Bumatay, J., concurring).

[6] Petitioner quotes a Middle District of Georgia order to assert that the Ninth Circuit requires the Government to bear the burden—but that court's assertion is plainly incorrect in this context as the Ninth Circuit case the court cites was abrogated in relevant part by *Rodriguez Diaz* in 2022. *Lopez Perez v. Paulk*, 830 F. Supp. 3d 1356, 1369 (M.D.

### *1. Petitioner's liberty interest is real but limited in the immigration context.*

The first *Mathews* factor concerns the private interest impacted by the governmental action. *Mathews*, 424 U.S. at 335.

The Tenth Circuit has held that "aliens do not have a constitutional right to . . . remain in the United States." *Aguilera v. Kirkpatrick*, 241 F.3d 1286, 1292 (10th Cir. 2001). This impacts the strength of the liberty interest at stake. *See Parra v. Perryman*, 172 F.3d 954, 958 (7th Cir. 1999) (in the pre-adjudicative setting, defining the interest as the more limited "liberty in the United States by someone no longer entitled to remain" in the country (emphasis omitted)); *cf. Miranda*, 34 F.4th at 361. The significance of an alien's interest in freedom from detention does not lead every circuit to require burden shifting.

Petitioner argues that his earlier release and subsequent re-detention heighten his liberty interest. [Doc. No. 1 ¶¶ 23, 25, 30–31]. He also emphasizes his family ties and lack of criminal history. *Id.* ¶ 33; [Doc. No. 8 at 7]. Those circumstances might support the importance of receiving an individualized custody determination, but Petitioner did receive one on March 23, 2026. [Doc. No. 1 ¶¶ 35, 42]; [Doc. No. 1-2]. His claim is that

---

Ga. Apr. 6, 2026) (citing *Singh v. Holder*, 638 F.3d 1196 (9th Cir. 2011), *abrogated in part by Rodriguez Diaz v. Garland*, 53 F.4th 1189 (9th Cir. 2022)); *see Rodriguez Diaz*, 53 F.4th at 1196 ("*Singh*[ *v. Holder*]'s holding . . . was expressly premised on the (now incorrect) assumption that these hearings were statutorily authorized."); *see also* [Doc. No. 8 at 5] (relying on *Lopez Perez v. Paulk*'s citation to *Singh*). The other district court decisions Petitioner cites do not control the Court's approach here. [Doc. No. 1 ¶¶ 26–28]; [Doc. No. 8 at 5–6]; *see Camreta v. Greene*, 563 U.S. 692, 709 n.7 (2011) (noting that a decision by a federal district judge is not binding precedent).

the burden at that hearing should have been placed on the Government. [Doc. No. 1 ¶¶ 43–46]. Even if Petitioner's earlier release from custody increased his interest in remaining free from detention, that interest does not establish that the *hearing* was constitutionally inadequate because he bore the burden of proof.

Petitioner alleges that his current period of detention began on November 3, 2025, approximately five and one-half months before he filed the Petition. [Doc. No. 1 ¶¶ 14, 31]. Even assuming his continued detention qualifies as prolonged, duration alone does not require the requested burden shift. The Court gives Petitioner's liberty interest the weight it is due—and certainly it favors him in a vacuum—but the factor must be considered together with the existing procedures and the Government's interest. *See Rodriguez Diaz*, 53 F.4th at 1207–08 (explaining that the court does not "simply count [the petitioner's] months of detention and leave it at that"; rather, the court must also "consider the process he received during this time, the further process that was available to him, and the fact that his detention was prolonged due to his decision to challenge his removal order").

***2. The risk of erroneous deprivation under the existing procedures, applied to the facts of this case, is low.***

The existing procedures adequately protect Petitioner's liberty interest, so the second *Mathews* factor favors Respondents. That factor concerns "the risk of an erroneous deprivation of [the private] interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards." 424 U.S. at 335.

Petitioner contends that the risk is substantial whenever detention continues without the Government proving its necessity. [Doc. No. 1 ¶ 44]; [Doc. No. 8 at 5–6]. He also argues that uncertainty about whether the IJ shifted the burden itself supports relief, relying on a district court decision that granted habeas relief when such a shift was not evident from the record. [Doc. No. 8 at 6–7] (citing *Singh v. Warden, Otero Cnty. Processing Cntr.*, No. 2:26-cv-00853-DHU-LF, 2026 WL 1236123, at *2 (D.N.M. May 5, 2026)). Respondents answer that Petitioner received an individualized hearing and that Petitioner alleges neither a denial of the opportunity to make arguments nor withholding of the evidence needed to make those arguments. [Doc. No. 7 at 4].

Here, Petitioner requested and received a custody redetermination hearing. [Doc. No. 1 ¶¶ 35, 42]. The order states the IJ gave full consideration of the evidence presented and identifies the reasons for denying release as flight risk based on Petitioner's imminent removal hearing, his manner of entry and lack of ties to the United States, and his relatively recent entry. [Doc. No. 1-2 at 1]. The order was addressed to (and served on) Petitioner's immigration attorney, which indicates that he was represented at those proceedings. *Id.* at 1–2. Petitioner is further represented by counsel in this action and has submitted the relevant immigration orders and documents with his Petition. [Doc. Nos. 1, 1-1, 1-2, 1-3].

Petitioner identifies no language difficulties at his bond hearing, no inability to obtain evidence, and no denial of an opportunity to present his case. *See generally* [Doc. Nos. 1, 8]. His asserted constitutional defect is only the burden allocation itself, without any factual detail as to the circumstances of the hearing. [Doc. No. 1 ¶¶ 5, 35, 43, 46].

That means the evidentiary and advocacy obstacles that the First and Second Circuits found concerning are not present on this record.

The existing procedures also provide for their own appellate review process, along with further opportunities for redetermination upon materially changed circumstances. 8 C.F.R. §§ 1236.1(d), 1003.19(e). While Petitioner apparently did not appeal the bond determination, [Doc. No. 7 at 2], whatever procedural disadvantage that presents is the result of litigation strategy. The opportunity for appellate review still reduces the risk of an erroneous custody determination.

As to the fact that the IJ's form order was silent on burden allocation, this does not establish anything at all, much less a constitutional violation. *See* [Doc. No. 8 at 6–7]. To grant relief because a burden shift was not evident would presume a categorical rule that the Tenth Circuit has not adopted and that the Court rejects. Petitioner's allegations about family ties and criminal history likewise lack a nexus to an inability to present that evidence. Rather, those allegations concern the IJ's weighing of the evidence, which the Court may not address because of 8 U.S.C. § 1226(e).

The Court need not decide whether to assume, as a matter of law, that alien petitioners have adequate access to advocacy resources in removal proceedings. Petitioner here has identified no concrete barriers to proving his case. Existing procedures afford opportunities to present evidence, obtain administrative review, and seek redetermination upon changed circumstances. The risk of error and value of an additional hearing with a different burden are therefore low. So factor two favors Respondents.

***3. The Government's interest in unmodified procedures is substantial.***

The third *Mathews* factor weighs "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." 424 U.S. at 335. The Government's interest in retaining the existing burden allocation favors Respondents.

Petitioner argues that the Government's interest dissolves if an alien is neither a flight risk nor dangerous. [Doc. No. 1 ¶ 27]; [Doc. No. 8 at 7]. He contends that his family ties and lack of criminal convictions leave the Government's interest heavily outweighed by his own. [Doc. No. 8 at 7]. Respondents rely on the existing regulatory burden and the IJ's individualized flight-risk determination. [Doc. No. 7 at 2–4 & n.3].

"[C]ontrol over matters of immigration is a sovereign prerogative, largely within the control of the executive and the legislature." *Landon v. Plasencia*, 459 U.S. 21, 34 (1982). The Supreme Court has "firmly and repeatedly endorsed the proposition that Congress may make rules as to aliens that would be unacceptable if applied to citizens," and detention serves the legitimate purpose of preventing risk of flight during removal and deportation proceedings. *Demore v. Kim*, 538 U.S. 510, 522, 528 (2003).[7] "[W]hen the Government deals with deportable aliens, the Due Process Clause does not require it to employ the least burdensome means to accomplish its goal." *Id.* at 528.

---

[7] While *Demore* dealt with criminal aliens subject to mandatory detention under 8 U.S.C. § 1226(c), the Court sees no reason why flight risk would be a legitimate purpose for detention only in a § 1226(c) context and not in a § 1226(a) context. The Court is not aware that the Tenth Circuit or the Supreme Court have hinted at such a distinction, and Petitioner does not direct the Court to any such appellate dicta.

Requiring the Government to prove flight risk by clear and convincing evidence at every § 1226(a) hearing would alter the existing regulatory burden allocation. *In re Guerra*, 24 I. & N. Dec. 37, 40 (B.I.A. 2006); 8 C.F.R. § 1236.1(c)(8) ("[T]he alien must demonstrate to the satisfaction of the officer that such release would not pose a danger to property or persons, and that the alien is likely to appear for any future proceeding."). Such a rule would shift the costs of evidence gathering onto the agency and lengthen contested bond hearings.

Granted, the First Circuit in *Hernandez-Lara* reasoned that the Government lacks an interest in detaining aliens who are neither a flight risk nor a danger to the community, thus placing the burden on the alien *means* that some aliens who fail to carry their burden of proof will remain detained even though they are not a flight risk or a danger. 10 F.4th at 33. So the panel concluded that "the public interest in placing the burden of proof on the detainee is uncertain at best, and may well be negative." *Id.*

But the Court does not find *Hernandez-Lara* persuasive because failing to carry a burden of proof on a subject particularly within the alien's knowledge and ability to marshal evidence lends an inference to nothing at all, much less the conclusion that the alien is *not* a flight risk. Congress can presume the opposite because immigration is a "sovereign prerogative, largely within the control of the executive and the legislature," *Landon*, 459 U.S. at 34, and so it "may make rules as to aliens that would be unacceptable if applied to citizens," *Demore*, 538 U.S. at 522. The deportation process "would be vain if those accused could not be held in custody pending the inquiry into their true character." *Wong Wing v. United States*, 163 U.S. 228, 235 (1896). The Court

sees no indication that the Supreme Court's century-old line of consistent due process construction does not apply to Petitioner's ability (or inability) to present adequate evidence on characteristics to which he retained close knowledge and had assistance of counsel.

Petitioner's contrary characterizations of his family ties and criminal history lie beyond the Court's jurisdiction and, in any case, they do not eliminate the Government's interest in the procedures used to determine whether an alien will appear in future proceedings. Petitioner's arguments here might counsel against the constitutionality of no-bond detention, but they say much less about the proper burden allocation at a bond hearing.

Balancing all three factors, the Court agrees with the Fourth and Ninth Circuits in concluding that, at least on the facts of this case, the existing bond procedures supply more than adequate process. Petitioner's counseled bond hearing—pertaining to matters well within his knowledge and ability to assemble evidence—was not constitutionally insufficient. His single due process count therefore fails.[8]

---

[8] Because the Court concludes that placing the danger and flight-risk burdens of proof on the alien does not offend the Fifth Amendment's Due Process Clause on this record, the Court does not reach the follow-on question of the appropriate evidentiary standards following a burden shift.

## IV. CONCLUSION

For these reasons, the Court DENIES the Petition for Writ of Habeas Corpus [Doc. No. 1].[9] The Court also DENIES as moot Petitioner's Motion for Expedited Consideration. [Doc. No. 10]. A separate judgment will follow.

IT IS SO ORDERED this 23rd day of November 2026.

JODI W. DISHMAN
UNITED STATES DISTRICT JUDGE

[9] The Tenth Circuit has stated that a certificate of appealability "is not required in order to appeal a final order in a proceeding under 28 U.S.C. § 2241." *McIntosh v. U.S. Parole Comm'n*, 115 F.3d 809, 810 n.1 (10th Cir. 1997) (citing *Bradshaw v. Story*, 86 F.3d 164, 165–66 (10th Cir. 1996)).